IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JAMES AUSTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 314-025 |
| | ) | (Formerly CR 312-003) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at Jesup Correctional Institution in Jesup, Georgia has filed with the Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss, (doc. no. 3), which Petitioner opposes, (doc. no. 4). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**, that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

### A. Indictment

On July 11, 2012, the grand jury in the Southern District of Georgia indicted Petitioner on one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine and 280 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1)

and 846. <u>U.S. v. Austin</u>, CR 312-003, doc. no. 1 (S.D. Ga. July 11, 2012) (hereinafter

"CR 312-003"). A total of twenty-two co-conspirators were named in the indictment. <u>Id.</u>

at 2. The conspiracy charge carried a potential sentence of not less than ten years nor

more than life imprisonment. <u>Id.</u>, doc. no. 2, p. 2. The Court appointed attorney James F.

Nelson, Jr., under the Criminal Justice Act to represent Petitioner. <u>Id.</u>, doc. no. 218.

**B.      Agreement to Plead Guilty**

On October 18, 2012, Petitioner pled guilty to conspiracy to possess with intent to

distribute cocaine, a lesser included offense of the conspiracy count charged in the

indictment. <u>See</u> <u>id.</u>, doc. no. 429. The beginning summary of the plea agreement

contained a one-line statement that Defendant agreed to waive his right to appeal his

sentence. <u>Id.</u> at 3. However, under the subsequent heading "Defendant's Representations

to the Court and Further Obligations Under this Agreement," Petitioner's plea agreement

expounded on the details of the summary and set forth a broad appeal and collateral

attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the Defendant
> voluntarily and expressly waives the right to appeal the conviction and
> sentence and the right to collaterally attack the conviction and sentence in
> any post-conviction proceeding, including a § 2255 proceeding, on any
> ground, except that: the Defendant may file a direct appeal of his sentence
> if it exceeds the statutory maximum; and the Defendant may file a direct
> appeal of his sentence if, by variance or upward departure, the sentence is
> higher than the advisory sentencing guideline range as found by the
> sentencing court.

<u>Id.</u> at 5-6. By signing the plea agreement Petitioner attested that he read and understood

the plea agreement, that the agreement accurately and correctly stated the representations

made to him by his attorney and representatives of the government, and that the

document accurately set forth the terms and conditions of his agreement with the government that Mr. Nelson negotiated with the permission of Petitioner and on his behalf. Id. at 10. Specifically, Petitioner attested, "I have read the foregoing Plea Agreement, consisting of 10 pages, including this page, and I understand what it says and means." Id.

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr., first queried Petitioner as to his competence to proceed and found that he was competent to enter a guilty plea if he so desired. Id., doc. no. 758, (hereinafter "Rule 11 Tr."), pp. 4-7. Mr. Nelson confirmed that he had explained the plea agreement "thoroughly" to Petitioner. Id. at 6. Petitioner also testified under oath that he had enough time to discuss and prepare his case with Mr. Nelson, was entirely satisfied with the assistance he had received from counsel, and had no trouble understanding Mr. Nelson's explanation of the charge to which he was pleading guilty. Id. at 7-8. Judge Bowen reviewed that Petitioner had been charged with participation in a conspiracy to possess with intent to distribute over 500 grams of cocaine and over 200 grams of cocaine base. Id. at 8. However, Judge Bowen also reviewed that Petitioner would be pleading guilty to the lesser included offense of conspiracy to possess with intent to distribute a quantity of cocaine hydrochloride only and that the maximum sentence of imprisonment for the lesser included offense was not more than twenty-years. Id. at 8-9. Petitioner confirmed he understood the charge and penalty. Id. at 9.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the rights

explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 11-13.

In addition, Judge Bowen reviewed the waiver provision with Petitioner, explaining he had agreed to waive any challenge or give up forever any right to challenge the fact of conviction, including a "federal habeas corpus or any other challenge." Id. at 14-15. Judge Bowen continued:

> Now let me go back to your waiver of appeal and waiver of post-conviction relief. That is a conditional waiver and it means this: that if for some reason I sentence you above the guideline range or above the statutory range, you would get a chance to appeal the sentence but you would never have a chance to appeal the fact of conviction.

Id. at 15. Petitioner affirmed that he understood Judge Bowen's explanation. Id. at 16. Petitioner also affirmed that he had not been forced, threatened or pressured into to pleading guilty and that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 14, 17.

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent James Jaskolka with the Drug Enforcement Administration. Id. at 17-22. SA Jaskolka described his investigation of a conspiracy involving the unlawful distribution of cocaine and crack cocaine that operated from about 2010 until June of 2012 throughout seven counties in the Southern District of Georgia; the multiple members of the conspiracy had various roles as buyers, suppliers, lookouts, and "muscle." Id. at 17-19. Petitioner served as lookout who, on at least two occasions, facilitated the transportation of drugs by a co-conspirator, and he was sometimes paid in small amounts of cocaine and cocaine base for

personal use and some for redistribution. Id. at 20. Petitioner affirmed that the testimony of SA Jaskolka's was correct. Id. at 22. Petitioner also told Judge Bowen he was guilty of, and wanted to plead guilty to, the lesser included offense of conspiracy to possess and distribute a quantity of cocaine. Id. at 23.

### C. Sentencing

The United States Probation Office then prepared a Presentence Investigation Report ("PSI") which set Petitioner's total offense level at 29, criminal history category at VI, and guideline imprisonment range at 151 to 188 months. PSI ¶¶ 29, 30, 47. The total offense level was calculated as follows: a base offense level of twenty-six based on 1.19 kilograms of cocaine hydrochloride involved in the case, an increase to thirty-two based on Petitioner's career offender status under U.S.S.G. § 4B1.1, and a three-point reduction for acceptance of responsibility.[1] PSI ¶¶ 13, 19-22. Prior to sentencing, Petitioner filed an objection to his designation as a career offender, contending that one of the convictions counted against him in the PSI was based on a guilty plea entered under Georgia's First Offender Act, O.C.G.A. § 42-8-60, and thus should not be used as a basis for application of career offender status. See PSI Addendum; CR 312-003, doc. no. 757 (hereinafter "Sent. Tr."), pp. 10-12.

---

[1] Petitioner qualified as a career offender under U.S.S.G. § 4B1.1(a) because he was at least eighteen years old at the time he committed the instant offense; the instant offense was a felony that is either a crime of violence or a controlled substance offense; and he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. See also PSI ¶ 19. The relevant portion of U.S.S.G. § 4B1.1(b) provides the offense level for a career offender is the greater of the offense level listed in the table in (b) or the offense level otherwise applicable. According to the table, a charge like Petitioner's with a statutory maximum of twenty years or more, but less than twenty-five years, has an offense level of thirty-two. U.S.S.G. § 4B1.1(b) also provides that a career offender's criminal history category shall be VI. See also PSI ¶ 30.

Judge Bowen took up Petitioner's objection at sentencing, and after hearing from both sides, ruled that it had no merit. Sent. Tr., pp. 10-16. Judge Bowen then adopted the factual findings in the PSI, recognized the maximum statutory sentence for Petitioner as twenty years in prison, and determined the applicable guideline range for imprisonment was 151 to 188 months in prison. Id. at 16. After hearing from defense counsel and Petitioner, Judge Bowen imposed a sentence of 151 months of imprisonment to be served consecutively to the fourteen-month sentence of imprisonment Judge Bowen imposed upon revocation of Petitioner's supervised release in U.S. v. Austin, CR 308-001 (S.D. Ga. Mar. 6, 2008) (hereinafter "CR 308-001").[2] Id. at 32-33 ; CR 312-003, doc. no. 552. Judge Bowen also reminded Petitioner that with only limited exceptions, he had "waived any right to appeal from the sentence and any right to attack the sentence in any post-conviction proceeding." Sent. Tr., p. 36.

In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal. Petitioner did file, however, the instant § 2255 motion to vacate, set aside, or correct his sentence.

### D.    § 2255 Proceedings

In his § 2255 motion, Petitioner raises three grounds for relief, all couched in

---

[2] In the prior case, Petitioner was charged with participating in a drug conspiracy involving a total of twenty-six people. CR 308-001, doc. no. 285. As with the criminal case underlying the current § 2255 motion, Petitioner entered into a plea agreement whereby he pled guilty to a lesser included offense of the conspiracy charge and was sentenced to forty-eight months of imprisonment, followed by five years of supervised release. Id., doc. nos. 486, 489, 558. Petitioner was on supervised release when he committed the offense to which he pled guilty in CR 312-003. Thus, at the time of sentencing in CR 312-003, Judge Bowen simultaneously took up the final revocation proceedings for CR 308-001. See generally Sent. Tr.

terms of ineffective assistance of counsel allegations. First, Petitioner claims Mr. Nelson provided ineffective assistance by counseling Petitioner to sign a plea agreement "purporting . . . to waive his right to appeal on one hand, but waive his right to appeal and collateral attack on another." (Doc. no. 1, p. 3.) Second, Mr. Nelson allegedly provided ineffective assistance by failing to move for a downward departure under U.S.S.G. § 3B1.2 based on Petitioner's minor role in the charged conspiracy.[3] Third, Mr. Nelson allegedly provided ineffective assistance by failing to object to the use of an unconstitutional state conviction to determine that Petitioner qualified as a career offender under U.S.S.G. § 4B1.1.

Respondent moves to dismiss Petitioner's § 2255 motion on the ground that it is barred by the collateral attack waiver in Petitioner's plea agreement. (See generally doc. no. 3.) In his opposition to the motion to dismiss, Petitioner contends he did not knowingly and voluntarily waive his right to attack his sentence. (See generally doc. no. 4.) The Court notes, however, that Petitioner's opposition to the motion to dismiss was not signed or attested to under penalty of perjury.

## II. DISCUSSION

### A. There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the

---

[3] U.S.S.G. § 3B1.2 provides:
Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels.

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. U.S., 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. U.S., 365 F.3d 1225, 1238-39 (11th Cir. 2004) (*per curiam*).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Vick v. U.S., 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.     Petitioner's Valid Collateral Attack Waiver Bars All But One of His Claims.**

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. U.S. v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); U.S. v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); U.S. v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. U.S., 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion). "To establish the waiver's validity, the government must show either that

(1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See U.S. v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); U.S. v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); U.S. v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same "in any post-conviction proceeding, including a § 2255 proceeding." CR 312-003, doc. no. 429, pp. 5-6. However, Petitioner could file a direct appeal of his sentence if it exceeded the statutory maximum or the advisory sentencing guideline range.[4] Id. at 6. Moreover, Judge Bowen reviewed the appeal and collateral attack waiver provision in the plea agreement during the change of plea proceedings. Rule 11 Tr., pp. 14-15. After Judge Bowen concluded his review, Petitioner acknowledged that he understood and agreed with the terms as explained. Id. at 16. Thus, any claim by Petitioner that he did not know about the ramifications of the waiver provision is without merit.

While Petitioner would have the Court ignore his responses to Judge Bowen's questions, "solemn declarations in open court carry a strong presumption of verity" and

---

[4]Neither of these circumstances occurred. See CR 312-003, doc. no. 552; PSI ¶ 47.

"constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Petitioner's belated contentions that he was unaware of the allegedly "conflicting" or "secret" provisions regarding waiver of rights to a direct appeal and collateral attack do not undermine those sworn attestations made to Judge Bowen at the guilty plea proceedings.[5] Indeed, the change of plea transcript confirms that Judge Bowen reviewed the appeal and collateral attack with Petitioner. Rule 11 Tr., p. 15 ("Now let me go back to your waiver of appeal and waiver of post-conviction relief.")

Because the record demonstrates that Petitioner knowingly and voluntarily agreed to the terms of his appeal and collateral attack waiver, the waiver is valid and bars Petitioner's current claims related to counsel's performance at sentencing. See Williams v. U.S., 396 F.3d 1340, 1341-42 (11th Cir. 2005) (precluding claim for ineffective assistance of counsel at sentencing based on valid sentence-appeal waiver); Brown v. U.S., 256 F. App'x 258, 262 (11th Cir. 2007) (per curiam) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); U.S. v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (per curiam) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver).

However, this finding does not end the Court's inquiry because Petitioner claims in ground one of his § 2255 motion that he received ineffective assistance when deciding

---

[5]Petitioner does not challenge his awareness of, and agreement to, a waiver of the right to a direct appeal. (Doc. no. 4, p. 2) ("Specifically, Petitioner claims that counsel advised him that his plea agreement would only waive his right to a direct appeal, and would not affect his right to collaterally attack his sentence or conviction outside of a direct appeal.")

whether to enter his guilty plea. This assertion, if found to have merit, would cast doubt not only on the validity of the appeal and collateral attack waiver, but also the knowing and voluntary nature of the entirety of the guilty plea. Indeed, courts have recognized that a defendant cannot waive the right to raise an ineffective assistance claim alleging a problem at the time he was entering the plea or regarding advice provided regarding the waiver. Vaca-Ortiz, 320 F. Supp. 2d at 1365; see also Williams, 396 F.3d at 1342 n.2 ("[T]here may be a distinction between a § 2255 claim of ineffective assistance related to the validity of a plea in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp.2d at 1365 (citing Bushert, 997 F.2d at 1350-51). However, as discussed *infra*, the Court determines that Petitioner's ineffective assistance claim in ground one forms no basis for relief.

### C. Petitioner Is Not Entitled to Relief on the Remaining Ineffective Assistance Claim.

#### 1. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. U.S., 538 U.S. 500, 505 (2003); U.S. v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Petitioner must show that counsel was constitutionally ineffective under the two prongs

11

of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. U.S., 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. U.S., 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012) (*per curiam*), cert. denied, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

**2.  Petitioner Has Not Shown Entitlement to Relief Based on the Claim of His Counsel Misadvising Him About the Appeal and Collateral Attack Waiver.**

Petitioner fails to satisfy either prong of the <u>Strickland</u> standard with respect to his claim that Mr. Nelson was ineffective for advising him to sign a "conflicting" plea agreement that waived his "right to appeal on one hand, but secretly waive[d] Petitioner's right to collateral attack on another, by conflicting provision within the four corners of the plea agreement." (Doc. no. 1, p. 4.) According to Petitioner he is illiterate, and Mr. Nelson presented the government's plea offer by discussing two pages of the plea agreement. (<u>Id.</u>) Petitioner does not explain which two pages were presented to him, as the Exhibit A referenced in his motion was not attached to his filing. (<u>Id.</u>) As set forth in footnote 5, *supra*, Petitioner does not contest that he knew about and agreed to a waiver of his direct appeal rights, but he asserts that he "surely" would have requested deletion of the collateral attack waiver or would not have "executed that portion of the plea agreement" had he known about it. (<u>Id.</u> at 6.)

First, Petitioner swore under penalty of perjury that he read the entirety of the plea agreement and understood what it said and meant. CR 312-003, doc. no. 429, p. 10. Although there was a one-line statement in the summary of the plea agreement that Petitioner agreed "to waive his right to appeal his sentence," the written agreement subsequently spelled out the waiver of the right to appeal and "collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding." <u>Id.</u> at 5-6. Petitioner also swore to Judge Bowen at the change of plea proceedings that although he could not read a newspaper, he understood the English

language. Rule 11 Tr., pp. 4-5. Mr. Nelson explained that he met numerous times with Petitioner and had thoroughly explained the plea agreement without any apparent trouble with Petitioner understanding. Id. at 5-6. Petitioner also confirmed he had enough time to discuss his case with Mr. Nelson. Id. at 7. The record simply does not support a conclusion there was a "secret" waiver of the right to collateral attack, as the written plea agreement clearly and explicitly spells out the waiver provision and counsel explained the agreement to Petitioner "thoroughly."[6] As discussed above, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. In the face of the sworn proceedings memorialized in the record, Petitioner's belated, self-serving claim that Mr. Nelson performed deficiently in not fully explaining the plea agreement does not satisfy the Strickland standard.

Even if the Court were to assume that, contrary to all of Petitioner's sworn assertions at the time he entered his guilty plea, Mr. Nelson had not explained the collateral waiver provision, Judge Bowen addressed it prior to accepting the guilty plea. Id. at 14-15. Moreover, Petitioner never states, let alone shows a reasonable probability, that he would have rejected the entirety of the plea offer and gone to trial on the original conspiracy charge in the indictment had Mr. Nelson provided him the information about the waiver provision that Petitioner now claims was withheld. See Hill, 474 U.S. at 59. At best, he asserts that he would have rejected the one provision of the plea agreement

---

[6]To the extent Petitioner claims there was a conflict within the four corners of the written agreement, that does not support Petitioner's conclusion of a "secret" waiver. (Doc. no. 1, p. 4; doc. no. 4, p. 2.) To the contrary, it shows a collateral attack waiver was evident on the face of the agreement.

15

about the collateral attack waiver, but there is nothing in the record to suggest that the government would have agreed to the plea deal without the collateral attack waiver. Thus, Petitioner cannot satisfy the Strickland standard, and he is not entitled to relief on an ineffective assistance claim based on purported misadvice from Mr. Nelson about the terms of the plea agreement.

**3.    Even if the Court Were to Assume that Petitioner Is Entitled to Pursue a Collateral Attack on His Sentence, He Is Not Entitled to Relief on His Two Remaining Ineffective Assistance Claims.**

Petitioner's argument against enforcement of the collateral attack waiver hinges on his interpretation of a purported conflict between the summary of the plea agreement that mentioned only an appeal waiver, and the full explanation of the agreement with the government that included the details of a collateral attack waiver. When looking at any disputed terms of a plea agreement, the Court must apply an objective standard in looking at what a defendant reasonably understood at the time he pleaded guilty. U.S. v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004). The Court should not employ a "hyper-technical reading of the written agreement," and it should not be interpreted to contradict an oral understanding, but any ambiguity "must be read against the government." Id. at 1105-06 (citations omitted). In light of the history of the proceedings in this case recounted above, the Court does not find any conflict or "secret" agreement, but even if the Court were to construe the agreement against the government and assume *arguendo* the collateral attack waiver is not enforceable, Petitioner fails to raise a valid ineffective assistance claim based on alleged sentencing errors because he cannot meet both prongs of the Strickland standard.

### a. Any Reduction for Minor Role in the Charged Offense Would Have Been Negated by Petitioner's Career Offender Designation.

In ground two of his motion, Petitioner claims that counsel was ineffective for failing to move for a reduction under U.S.S.G. § 3B1.2 based on Petitioner's minor role in the conspiracy. (Doc. no. 1, pp. 7-13.) Disregarding for the moment that Petitioner was already given a plea agreement that allowed a guilty plea to a lesser offense than what was charged, any reduction in the base offense level for a minor role in the offense would have made no difference to Petitioner's advisory guideline calculation. Because Petitioner qualified as a career offender under U.S.S.G. § 4B1.1, his offense level was automatically set at 32. See PSI ¶ 19; note 1, *supra*. Even if Mr. Nelson had moved for, and convinced Judge Bowen to apply, a reduction to the base offense level of 26, the reduction would have been automatically negated by the requirements of U.S.S.G. § 4B1.1 that a career offender such as Petitioner have his offense level set at 32. See PSI ¶¶ 14, 16, 19. Thus, even if there had been a basis for a minor participant reduction, an assertion not established in the record, it would have made no difference to the advisory guideline sentence calculation. Moreover, as Judge Bowen explained at the change of plea proceedings, he could impose any sentence up to the statutory maximum of twenty years of imprisonment. The sentence imposed of 151 months was nearly seven and one half years below that maximum.

Petitioner has not shown that failing to move for a minor participant reduction in the advisory sentencing guideline calculation amounted to deficient performance by Mr. Nelson or that he was prejudiced by the decision not to move for such a reduction.

17

Accordingly, even if Petitioner were not barred by the terms of his plea agreement from raising the claim in ground two of his § 2255 motion, he would not be entitled to relief because has not satisfied the <u>Strickland</u> standard.[7]

> **b.  Mr. Nelson Had No Basis to Challenge Use of a State Conviction that Had Not Been Overturned in State Court.**

To the extent Petitioner also attempts to challenge his status as a career offender under U.S.S.G. § 4B1.1, (<u>see</u> PSI ¶ 19), by raising an ineffective assistance claim against Mr. Nelson, that, too, fails as a basis for relief in these proceedings. In Petitioner's argument in support of ground three of his § 2255 motion, he is actually complaining about the performance of counsel in one of the *state* proceedings counted against Petitioner for federal sentencing purposes. (<u>See</u> doc. no. 1, pp. 15-17.) Petitioner states he "intends to challenge" the Telfair County conviction, but he raises the claim herein "as a token of diligence and preservation." <u>Id.</u> at 17.

The record established Mr. Nelson did try to challenge use of the 2003 conviction based on the argument that a conviction entered under Georgia's First Offender Act,

---

[7]Additionally, subject to a showing of cause and prejudice or a fundamental miscarriage of justice, sentencing errors are not generally cognizable on collateral review but instead should be raised on direct appeal. <u>Lynn v. U.S.</u>, 365 F.3d 1225, 1232-33 (11th Cir. 2004); <u>Mills v. U.S.</u>, 36 F.3d 1052, 1055 (11th Cir. 1994) (*per curiam*). Petitioner's attempt to wrap his attack on his sentence into an ineffective assistance claim should not be allowed to save his sentencing claim. "To allow this challenge now (in the guise of an ineffective assistance claim) would render collateral review nothing more than a substitute for direct appeal, which is not the purpose of section 2255." <u>Micolta v. U.S.</u>, No. 8:07-cv-1835-T-17MAP, 2008 WL 3889585, at *6 (M.D. Fla. Aug. 18, 2008) (citing <u>Burke v. U.S.</u>, 152 F.3d 1329, 1331 (11th Cir. 1998)). As noted above, Petitioner concedes he knew about and agreed to waive his right to a direct appeal. (Doc. no. 1, p. 5.)

O.C.G.A. § 42-8-60, should not be used as a basis for application of career offender status, but Judge Bowen rejected the argument. See PSI Addendum; Sent. Tr., pp. 10-16. Putting a new twist on the failed argument that a First Offender conviction should not count for purposes of career offender status, Petitioner now claims that the conviction was unconstitutional. Specifically, Petitioner maintains that because ten years earlier, his state counsel misadvised him there would be no collateral consequences to pleading guilty under the Georgia First Offender Act, the conviction should be overturned. (Doc. no. 1, pp. 15-17.) However, case law is clear that when challenging the use of a predicate state conviction in federal proceedings, "success in the state courts is a prerequisite for federal habeas relief." Stewart v. U.S., 646 F.3d 856, 859 (11th Cir. 2011). Petitioner concedes he has not yet challenged, let alone had overturned, the state conviction he claims was improperly used to determine he qualifies as a career offender under U.S.S.G. § 4B1.1. (Doc. no. 1, p. 17.)

In reality, the ineffective assistance claim raised in ground three amounts to a claim against state counsel, not Mr. Nelson. Petitioner has not argued, let alone established, the 2003 conviction is "presumptively void" such that he would somehow be excused from first raising his challenge in state court. U.S. v. Watson, 461 F. App'x 887, 889 (11th Cir. 2012) (*per curiam*). Indeed, Petitioner raises the matter only as a "token" in these proceedings because he intends to challenge the 2003 conviction in Telfair County Superior Court. (Doc. no. 1, p. 17.) There is nothing in the record to suggest that at Petitioner's federal sentencing, Mr. Nelson could have validly made the argument Petitioner now raises against his state counsel to avoid the career offender status

19

designation.  See Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (holding that if, issues are without merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel.") Thus, even if Petitioner were not barred by the terms of his plea agreement from raising the claim in ground three of his § 2255 motion, he would not be entitled to relief because has not satisfied the Strickland standard.

### D.     Petitioner Entered a Knowing and Voluntary Guilty Plea.

Having determined that Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, and that his first ineffective assistance claim, as well as two claims challenging the calculation of his advisory guideline sentence under the guise of ineffective assistance claims, are without merit, the Court will lastly address any overarching implication derived from the § 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily entered.  The record is clear that any such argument is without merit.

### 1.     Standard for Enforceability of Guilty Pleas.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  U.S. v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid

guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." <u>U.S. v. Brown</u>, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." <u>Id.</u> Thus, a defendant must receive "real notice of the true nature of the charged crime." <u>Id.</u>

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>U.S. v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." <u>Id.</u> at 1020 (quoting <u>U.S. v. Dominguez Benitez</u>, 542 U.S. 74, 83 (2004)).

### 2. Judge Bowen's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.

Judge Bowen reviewed with Petitioner in clear terms of the charge to which he was pleading guilty, as well as the penalties that might be imposed in the event of

Petitioner's conviction, and Petitioner testified that he understood the charge and penalties. Rule 11 Tr., pp. 8-9. Judge Bowen provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 11-13. Petitioner affirmed that he had not been forced, threatened or pressured into pleading guilty and that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 14, 17. Petitioner also admitted to the facts presented by the government as the factual basis for the plea and told Judge Bowen that he wanted to plead guilty to the charge delineated in the plea agreement. Id. at 17-22.

Petitioner further testified that he had enough time to review and prepare his case with Mr. Nelson and that he had no problem understanding Mr. Nelson's explanation of the charge he faced. Id. at 7-8. He also stated under oath that he was entirely satisfied with the assistance he had received from Mr. Nelson. Id. at 7. Thus, Judge Bowen's thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim that his guilty plea was not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a

formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also U.S. v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 3), that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 18th day of August, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA